1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

1st SECURITY BANK OF WASHINGTON,

Plaintiff,

v.

THOMAS B. ERIKSEN and JORDAN
SCHRADER, P.C.,

Defendants.

No. CV06-1004RSL

ORDER GRANTING MOTION FOR
PROTECTIVE ORDER

## I.  INTRODUCTION

15

16

17

18

19

20

21

22

This matter comes before the Court on plaintiff's "Motion for Protective Order" (Dkt. #12).  Plaintiff seeks a protective order under Federal Rule of Civil Procedure 26(c) to prohibit the discovery of materials relating to its defense in an earlier related lawsuit, Blakenship v. 1st Security Bank of Washington, CV05-1697(W.D. Wash. 2006).  Plaintiff argues that these materials are protected by attorney-client privilege and attorney work product doctrine. Defendants contend that this privilege has been waived.  For the reasons laid out below, the Court grants plaintiff's motion for a protective order.

## II.  FACTUAL BACKGROUND

23

24

25

26

Plaintiff in this action is 1st Security Bank of Washington and defendants are Thomas Eriksen, an attorney, and Jordan Schrader, P.C., a law firm based in Portland, Oregon.  In early 2004, plaintiff retained defendant law firm to draft a Supplemental Employee Retirement Plan

27

28

ORDER GRANTING MOTION
FOR PROTECTIVE ORDER -1

("SERP") for its Chief Executive Officer Ronald Blankenship.  Soon after the SERP was signed, Blankenship was terminated.  He then filed a lawsuit in the Western District of Washington for payment under the plan.  Cross motions for summary judgment were filed, but before any decision was issued, the parties settled for $500,000.  Plaintiff was represented throughout that litigation by the law firm of Preston Gates & Ellis ("Preston").[1]

Plaintiff has now filed a malpractice lawsuit against defendants alleging that were it not for the professional negligence of defendant law firm, it would not have been forced to enter into a settlement requiring payment to Blankenship.  Plaintiff seeks reimbursement for both the $500,000 settlement and the more than $100,000 in attorney's fees it incurred defending itself in the earlier action.

At issue here is defendants' request that plaintiff produce a "complete copy" of Preston's file relating to its representation of plaintiff in the earlier lawsuit.  Defendants argue that plaintiff has waived its privilege from the earlier case and assert that they require this information for three primary reasons.  First, they maintain that plaintiff, in the earlier lawsuit, argued that the SERP was "clear and unambiguous," whereas in this suit it argues the opposite.  They contend that this entitles them to "review the file of Preston Gates to see what material they obtained, both from their client and from other sources, in coming to the conclusions that they asserted in their pleadings."  Response at p. 4.   Second, defendants argue that they require this material to challenge plaintiff's assertion that its settlement with Blankenship was "reasonable."  Finally, defendants assert that they require the complete file to investigate plaintiff's claim for attorney's fees incurred in the earlier action.  Plaintiff seeks a protective order prohibiting the disclosure of such information on attorney-client privilege and attorney work product grounds.

### III.  DISCUSSION

Federal Rule of Evidence 501 provides that state law supply the rule of decision on attorney-client privilege questions in diversity cases.  <u>Home Indem. Co. v. Lane Powell Moss</u>

---

[1]Preston Gates & Ellis is now K&L Gates.

ORDER GRANTING MOTION
FOR PROTECTIVE ORDER -2

1   and Miller, 43 F.3d 1322, 1326 (9th Cir. 1995).  Washington law therefore controls this issue.

2   RCW 5.60.060(2)(a) provides the applicable statutory rule:

3           An attorney or counselor shall not, without the consent of his or her client,
            be examined as to any communication made by the client to him or her, or
4           his or her advice given thereon in the course of professional employment.

5   This same privilege, afforded to the attorney in the statute, is extended to the client under the

6   common law rule.  Pappas v. Holloway, 114 Wn.2d 198, 202-03 (1990).

7           Like many other jurisdictions, Washington courts have adopted the test set out in Hearn

8   v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975) when determining whether an implied waiver of

9   the attorney-client privilege has occurred.  See Pappas, 114 Wn.2d at 207-08; see also Home

10  Indem. Co. v, 43 F.3d at 1326 (also adopting Hearn test).  Under Hearn, an implied waiver of

11  the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some

12  affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the

13  privileged information at issue; and (3) allowing the privilege would deny the opposing party

14  access to information vital to its defense.  Hearn, 68 F.R.D. at 581.  Under the Hearn test, "an

15  overarching consideration is whether allowing the privilege to protect against disclosure of the

16  information would be 'manifestly unfair' to the opposing party."  Home Indem. Co., 43 F.3d at

17  1326 (quoting Hearn, 68 F.R.D. at 581).

18          Though both parties reference Hearn, neither party attempts to analyze the privilege

19  claims at issue here under the framework laid out in the case.  Both parties, however, do attempt

20  to draw support from Pappas, which rests on an analysis of the Hearn factors.  As such, the

21  Court will begin there.  In Pappas, defendant Holloway hired plaintiff Pappas, together with a

22  number of other attorneys, to represent him in various lawsuits filed against him in relation to

23  the sale of diseased cattle.  Id. at 199-200.  Prior to going to trial, Pappas withdrew as counsel.

24  Id. at 200.  Holloway ultimately lost at trial, which resulted in a $2.9 million verdict against him.

25  Id.  After the conclusion of the trial Pappas sued Holloway to recover unpaid attorney's fees and

26  Holloway counter-claimed alleging malpractice.  Id. at 200-01.  Pappas then brought third-party

27

28  ORDER GRANTING MOTION
    FOR PROTECTIVE ORDER -3

1    complaints against all the other attorneys who also represented Holloway in the underlying

2    litigation and eventually filed a motion to compel these third-party defendants to produce

3    documents relating to the underlying litigation.  Id. at 201.  The third-party defendants objected

4    to production of the materials on the basis of attorney-client privilege and attorney work product

5    doctrine.  Id. at 202.

6         The court ultimately rejected the third-party defendants' attorney-client privilege claims

7    after conducting a Hearn analysis and affirmed the lower court's grant of Pappas' motion to

8    compel.  Id. at 207-08.  Analyzing the facts under the first two prongs of the Hearn test, the

9    court concluded that it was defendant's affirmative act of filing a counterclaim against Pappas

10   that caused malpractice to become an issue in the litigation.  Id. at 208.  Once malpractice

11   became an issue in the case, the decisions, actions and duties of the other attorneys involved in

12   the underlying litigation became central to determining the legal and factual issues of the case.

13   The court also concluded that the third Hearn prong had been met because Pappas' defense

14   would require an examination of decisions made at various stages of the underlying litigation by

15   not just himself, but also the other attorneys involved in the case, including those who eventually

16   took the case to trial.  Id. at 208-09.  To deny access to the materials surrounding those decisions

17   would be to deny Pappas information vital to his defense.  Id.

18         Defendants argue that Pappas is applicable here and that it stands for the broad

19   proposition that attorney-client privilege is waived in a malpractice action with respect to

20   communications made between the client and his attorneys in a related "underlying matter."  In

21   doing so, defendants overstate the reach of Pappas as it applies to the facts of this case.  Pappas

22   is clear in distinguishing cases such as this where the attorney-client communications being

23   sought occurred only after "the underlying litigation which gave rise to the malpractice claim."

24   Id. at 205-06.  The "underlying matter" that gave rise to the malpractice claim here is the

25   drafting of the SERP, not the later filed lawsuit by Blankenship.  Preston played no role in the

26   drafting of the SERP, and its representation of plaintiff only began after the SERP was signed.

27

28   ORDER GRANTING MOTION
     FOR PROTECTIVE ORDER -4

1   This case, therefore, presents a fundamentally different situation than the one that was present in

2   Pappas, where the decisions and actions of the third-party defendants were significantly

3   intertwined with the allegations of malpractice made against Pappas in the counter-claim.

4   Pappas, therefore, cannot support defendants' waiver argument.

5        Having determined that Pappas provides no support for defendants' arguments, the Court

6   moves to analyzing the waiver issue under the Hearn test.  For the purposes of this analysis, the

7   Court will assume that plaintiff's malpractice claim constitutes an affirmative act that satisfies

8   the first element of the test.  The next question becomes whether the malpractice claim itself

9   puts the privileged information at issue.  The Court finds that it does not.  Under Washington

10  law, a legal malpractice claim requires a showing of (1) the existence of an attorney-client

11  privilege giving rise to a duty of care to the client, (2) an act or omission in breach of the duty,

12  (3) damages to the client, and (4) proximate causation between the breach and damages.  Sherry

13  v. Diercks, 29 Wn. App. 433, 437 (1981).  As discussed above, plaintiff's privileged

14  communications with Preston are not relevant to the determination of defendant's malpractice

15  liability in drafting the SERP.  Though the reasonableness of the settlement may become an

16  issue in determining the amount of damages, as long as plaintiff seeks to justify the settlement

17  amount on objective terms apart from the advice of counsel, the attorney-client privilege should

18  remain protected.  See Home Indem. Co., 43 F.3d at 1327 (determining that plaintiff does not

19  waive attorney-client privilege simply by defending the reasonableness of a previous settlement

20  provided that it does not attempt to justify the settlement on the basis of its counsel's

21  recommendations).

22        Because the information defendants seek is largely available from other sources,

23  analyzing defendants' argument under the final Hearn prong also weighs in favor of granting

24  plaintiff's motion.  Under Hearn, the information sought must be "vital" to defendants' case,

25  meaning that the information is available from no other source.  United States v. Amlani, 169

26  F.3d 1189, 1195 (9th Cir. 1995); Frontier Refining Inc. v. Gorman-Rupp Co., Inc., 136 F.3d

27

28  ORDER GRANTING MOTION
    FOR PROTECTIVE ORDER -5

1  695, 701-02 (10th Cir. 1998).  Mere relevance to defendant's case is not sufficient.  <u>Frontier</u>

2  <u>Refining Inc.</u>, 136 F.3d at 701.  Nearly all the information defendants seek to obtain from

3  privileged material can be determined from non-privileged sources.  For instance, defendants are

4  free to reference plaintiff's summary judgment briefing in the <u>Blankenship</u> case to develop an

5  understanding of the basis of its arguments in that matter.  On the question of the reasonableness

6  of the settlement, defendants have access to witnesses other than plaintiff's attorneys who can

7  shed light on the reasons for settlement, and to experts who could opine on the reasonableness of

8  the settlement.  <u>See Frontier Refining Inc.</u>, 136 F.3d at 701-702 (holding that privileged

9  information was not vital to defense case because defendant "had access to information

10 regarding the reasonableness of the settlement and Frontier's motivations for settling through

11 witnesses other than Frontier's attorneys"); <u>see also</u> <u>Tribune Co. v. Purcigliotti</u>, No. 93 CIV.

12 7222 LAP THK, 1997 WL 10924, at *7 (S.D.N.Y. Jan. 10, 1997) (defendants are free to

13 challenge the reasonableness of a previous settlement, but they can do so without breaching

14 plaintiffs' privileges based on defenses they choose to assert).  Because defendants can obtain

15 this information from non-privileged sources, the Court concludes that plaintiff has made no

16 implied waiver of attorney-client privilege on communications relating to arguments made in the

17 underlying action or to the reasonableness of the settlement.[2]

18       Though the Court concludes that a protective order is justified for the majority of

19 information sought by defendants, defendants are correct that they are likely entitled to some

20 information relating to the fees paid by plaintiff to Preston in the underlying action.  <u>See Clarke</u>

21 <u>v. American Commerce Nat'l Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have

22 recognized that the identity of the client, the amount of the fee, the identification of payment by

23 case file name, and the general purpose of the work performed are usually not protected from

24 _____

25     [2]Plaintiff also seeks the protective order based on attorney work product doctrine.  Having

26 found that the attorney-client privilege protects all of the documents that reflect the advice of counsel, the Court need not consider the applicability of the work product doctrine.

27

28 ORDER GRANTING MOTION
FOR PROTECTIVE ORDER -6

1  disclosure by the attorney-client privilege.").  Plaintiff itself acknowledges this in its motion.

2  Motion at p. 3 n.1.  That being said, defendants are entitled to significantly less than the entire

3  Preston file on the underlying matter.  See Amlani, 169 F.3d at 1194-95 (applying Hearn factors

4  to request for billing records as well as additional correspondence).  Rather than rule on this

5  limited aspect of defendants' request here, the Court requests that the parties seek to resolve this

6  issue using this Order as guidance.  If agreement cannot be reached, the Court will address this

7  question at that time.

8  ### IV.  CONCLUSION

9        For all the foregoing reasons, plaintiff's motion for a protective order (Dkt. #12)

10  prohibiting the disclosure of attorney-client information and work product pertaining to the

11  defense of plaintiff in the case of Blankenship v. 1st Security Bank of Washington, is

12  GRANTED.  The Court reserves the issue of the scope of discoverable materials relating to the

13  fees paid to Preston by plaintiff.

14

15        DATED this 22nd day of January, 2007.

16

17

18  Robert S. Lasnik

19  United States District Judge

20

21

22

23

24

25

26

27

28  ORDER GRANTING MOTION
    FOR PROTECTIVE ORDER -7